UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THOMAS A. MOURIER,<br><br>        Plaintiff,<br><br>        v.<br><br>WILLIAM F. GALVIN, SECRETARY OF THE<br>COMMONWEALTH, in his official capacity;<br>MASSACHUSETTS SECURITIES DIVISION; and<br>MASSACHUSETTS OFFICE OF CONSUMER<br>AFFAIRS AND BUSINESS REGULATION,<br><br>        Defendants. | CIVIL ACTION<br>No. 23-CV-11280-IT |

## DEFENDANT'S MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION AND FOR FAILURE TO STATE A CLAIM

ANDREA JOY CAMPBELL
ATTORNEY GENERAL

Arjun K. Jaikumar (BBO # 691311)
Assistant Attorney General
Office of the Attorney General
One Ashburton Place
Boston, MA 02108
617-963-2856
arjun.k.jaikumar@mass.gov

Dated: November 10, 2023

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................ 1

BACKGROUND AND FACTUAL ALLEGATIONS ...................................................... 2

     A.     Statutory and Regulatory Background........................................................ 2

           1.     Federal Law and Regulations............................................... 2

           2.     State Regulations ................................................................. 4

     B.     Plaintiff's Allegations ................................................................................ 6

ARGUMENT ............................................................................................................... 7

     A.     Standards of Review .................................................................................. 7

     B.     The Court Should Dismiss The Entire Complaint For Lack of
           Jurisdiction And For Failure To State A Claim ......................................... 8

           1.     Plaintiff Lacks Standing To Bring A Claim Challenging
                 The MCE................................................................................ 8

           2.     Should The Court Reach The Merits Of Plaintiff's Claims,
                 It Should Dismiss For Failure To State A Claim........................ 11

     C.     Leave To Amend Would Be Futile.......................................................... 20

CONCLUSION........................................................................................................... 20

## INTRODUCTION

This is a case about confusion, not preemption.  Plaintiff Thomas Mourier confuses the interplay between a state securities regulation, the Massachusetts Crowdfunding Exemption ("MCE"), codified at 950 C.M.R. § 14.402(B)(13)(o), and similar federal statutes and regulations governing crowdfunding for securities ("federal Regulation Crowdfunding").  Plaintiff wishes to operate a "funding portal" for interstate offerings in the Commonwealth of Massachusetts and believes the MCE precludes him from doing so.

Plaintiff's allegations exhibit a fundamental misunderstanding of the state and federal regulations at issue.  Plaintiff misconstrues the MCE, a purely *intrastate* regulation, as one applying to the interstate crowdfunding in which his business operates.  The plain language of the MCE limits its scope to intrastate offerings conducted by an entity formed under the laws of Massachusetts and the Securities Act expressly exempts such intrastate offerings from its purview.  There is no conflict between the two.  A given issuer or intermediary may be subject to federal or state crowdfunding exemptions, but not both – and Plaintiff's interstate business is ineligible for the MCE.

Plaintiff therefore has not been – and cannot be – injured by the operation of the MCE and therefore lacks standing to challenge it.  Even if he did have standing, Plaintiff's remaining allegations are conclusory, rest on misinterpretations of the applicable law, and are barred as against two Defendants by the Eleventh Amendment.  Defendants William F. Galvin, Secretary of the Commonwealth of Massachusetts, the Massachusetts Securities Division, and the Massachusetts Office of Consumer Affairs and Business Regulation ("OCABR") (collectively, "Defendants") respectfully request that the Court dismiss the Complaint with prejudice.

1

## BACKGROUND AND FACTUAL ALLEGATIONS

### A.        Statutory and Regulatory Background

"Crowdfunding," in the business context, "allows businesses, particularly those in their nascent stages, to secure funding from a broad base of investors, often through online platforms." Compl. ¶¶ 32-33.   Crowdfunding platforms, including investment portals, function as an intermediary similar to a broker-dealer, connecting potential investors or purchasers of securities with offerings.  *Id.*  There are thus essentially three sides to every crowdfunded offering: (1) the issuer who issues and sells securities, (2) the intermediary or portal through which individuals can purchase securities, and (3) the investors who purchase securities.

Both federal and state statutes and regulations govern the crowdfunding of securities. Federal law regulates crowdfunding offerings across state lines under the Jumpstart Our Business Startups Act ("JOBS Act") of 2012.  Three separate state regulations govern (1) intrastate crowdfunding offerings, under the MCE; (2) filing requirements for issuers of securities related to notice and service of process for interstate offerings, 950 C.M.R. § 14.402(B)(13)(p), and (3) notice filing requirements for federal crowdfunding *portals* based in Massachusetts, 950 CMR § 12.206.

### 1.        Federal Law and Regulations

The crowdfunding-related provisions of the JOBS Act amend Section 4 of the Securities Act of 1933 and are codified at 15 U.S.C. § 77d(a)(6) and 15 U.S.C. § 77d-1.  They exempt crowdfunded transactions involving the offer or sale of securities from the Securities Act's registration requirements for issuers of securities, subject to certain requirements and limitations.

The JOBS Act excluded certain issuers from eligibility for the federal crowdfunding exemption.  As relevant here, the Act excluded "an investment company, as defined in section 80a–3 of this title" and any issuer "subject to the requirement to file reports pursuant to section

78m of this title," which in turn includes issuers engaged in resource extraction such as the commercial development of oil, gas, or minerals. 15 U.S.C. §§ 77d-1(f)(2),(3), 15 U.S.C. § 78m(q).[1] Although the Securities Act imposes a $1 million cap on the amount a particular issuer may raise annually under the crowdfunding exemption, 15 U.S.C. §§ 77d(a)(6)(A), the SEC has promulgated regulations raising the maximum amount of capital an issuer is permitted to raise annually via crowdfunding to $5,000,000. *See* 17 C.F.R. § 227.100.[2]

As the Securities Act is concerned with interstate commerce and securities transactions substantially affecting interstate commerce, it expressly exempts purely *intrastate* offerings from its purview; the Act leaves regulation of purely intrastate securities offerings to state governments, consistently with the principle of federalism. Section 3(a)(11) of the Securities Act, codified at 15 U.S.C. § 77c(a)(11), states that:

> "the provisions of this subchapter shall not apply to . . . [a]ny security which is a part of an issue offered and sold only to persons resident within a single State or Territory, where the issuer of such security is a person resident and doing business within or, if a corporation, incorporated by and doing business within, such State or Territory."[3]

---

[1] The Securities and Exchange Commission ("SEC") has promulgated rules declaring the same classes of issuers ineligible, under express statutory authorization. 17 C.F.R. §§ 227.100(b)(2), (3); *see* 15 U.S.C. § 77d-1(f)(2).

[2] The Act establishes several requirements for crowdfunding portals such as Plaintiff's business, mandating that for any interstate crowdfunding offering, "the transaction is conducted through a broker or funding portal that complies with the requirements of section 77d–1(a) of this title." 15 U.S.C. §§ 77d-1(a)(6)(A), (C). Securities Act Section 77d-1(a) requires, among other things, that "[a] person acting as an intermediary in a transaction involving the offer or sale of securities for the account of others" under the crowdfunding exemption must register with the SEC as a broker or a funding portal. 15 U.S.C. §§ 77d-1(a)(1)(A).

[3] The referenced "subchapter" is Subchapter I of Chapter 15 of the United States Code governing domestic securities; its provisions are numbered 15 U.S.C. §§ 77a through 77aa. Section 4(a)(6) of the Securities Act, codified at 15 U.S.C. § 77d(a)(6), is included in that subchapter.

SEC Rules 147 and 147A provide the regulatory framework for offers and sales within the exemption provided by Securities Act Section 3(a)(11). 17 C.F.R. §§ 230.147, 230.147A. They do not purport to preempt state regulations regarding intrastate offers or sales of securities.

In 1996, Congress enacted the National Securities Markets Improvement Act, which expressly preempted parallel state regulation of various "covered securities." *See generally* 15 U.S.C. § 77r. NSMIA did *not* include as covered securities "the offer or sale of a security that is exempt from . . . registration pursuant to paragraph (4) or (11) of [section 3(a) of the Securities Act]." 15 U.S.C. § 77r(b)(4)(E). In other words, even as NSMIA preempted a large swath of state securities regulation, it preserved the states' primary role in regulating intrastate offerings. NSMIA also ensured that states could continue to require certain filings from issuers for the purposes of notice, service of process, and the assessment of fees for these offerings.[4]

### 2.     State Regulations

Pursuant to the Securities Act's exemption for intrastate offerings, in 2014, Secretary Galvin promulgated a parallel regulation governing analogous *intrastate* crowdfunding initiatives, the MCE.[5]  The MCE, codified at 950 C.M.R. § 14.402(B)(13)(o), exempts crowdfunding of securities from state registration requirements where, among other requirements, "[t]he issuer is a

---

[4] *See* 15 U.S.C. § 77r(c)(2)(A) ("Nothing in this section prohibits the securities commission . . . of any State from requiring the filing of any document filed with the Commission pursuant to this subchapter, together with annual or periodic reports of the value of securities sold or offered to be sold to persons located in the State . . . solely for notice purposes and the assessment of any fee, together with a consent to service of process and any required fee.").

[5] At least 34 states and the District of Columbia have enacted similar statutes or regulations. *See, e.g.*, Ala. Code § 8-6-11 (Alabama); Alaska Stat. § 45.56.130 (Alaska); Ariz. Rev. Stat. § 44-1844(D) (Arizona); Colo. Rev. Stat. Ann. § 11-51-308.5(3) (Colorado); Del. Code tit. 6, § 73-207 (b)(15) (Delaware); Fla. Stat. § 517.0611 (Florida). Many of these jurisdictions, including Massachusetts, have worked with the North American Securities Administrators Association ("NASAA"), a coalition of state and provincial securities regulators across the United States and Canada, to promulgate consistent and near-uniform rules for intrastate crowdfunding.

business entity . . . [f]ormed under the laws of the Commonwealth," and where the offering is sold only to residents of the Commonwealth in compliance with the requirements of § 3(a)(11) of the Securities Act of 1933 . . . or SEC Rule 147 or 147A (17 C.F.R. 230.147 or 230.147A)."

      The MCE largely mirrors similar federal regulations, with one notable exception relevant here. The MCE limits annual aggregate crowdfunding to $1 million per issuer, if the issuer has not undergone a financial audit concerning the previous fiscal year and made the results available to investors and to the Commonwealth; and $2 million per issuer, if the issuer has done so. At the time the MCE was promulgated, it mirrored the federal exemption in this respect. *See* 15 U.S.C. 77d(a)(6)(A). Like the federal exemption, the state exemption is not available to issuers who are investment companies or operating in extractive industries. 950 C.M.R. 14.402(B)(13)(o)(6)(e). It is also not available to any issuer whose officers, directors, or major shareholders (defined as individuals with control over 20% of the issuer's voting equity securities, determined by voting power) have been found to have violated securities laws or other financial regulations, or have committed other types of misconduct or fraud. 950 C.M.R. § 14.402(B)(13)(o)(10).

      With one exception, all of the MCE's provisions concern the status and conduct of *issuers* rather than broker-dealers or other intermediaries. *See* 950 C.M.R. § 14.402(B)(13)(o)(1), (2), (3), (4), (5), (6), (8), (10), (11), (12), (14), (15). The lone exception, 950 C.M.R. § 14.402(B)(13)(o)(7), states that "[n]o commission, fee, or other remuneration shall be paid or given, directly or indirectly, to any person for soliciting any prospective purchaser for a transaction in reliance upon the exemption provided by 950 CMR § 14.402(B)(13)(o) unless such person is registered as a broker-dealer or agent under Securities Exchange Act of 1934." Plaintiff does not cite or challenge this provision.

Consistently with NSMIA's preemption of state regulation of interstate offerings, including crowdfunding, the Secretary of the Commonwealth promulgated a far more limited regulation governing *interstate* crowdfunding.   This regulation, entitled "Notice Filing Requirement for Federal Crowdfunding Offerings" and codified at 950 C.M.R. § 14.402(B)(13)(p), expressly applies "to offerings made under federal Regulation Crowdfunding 17 CFR § 227 and Sections 4(a)(6) and 18(b)(4)(C) of the Securities Act of 1933." It states that "[a]n issuer that offers and sells securities in the Commonwealth in an offering exempt under federal Regulation Crowdfunding" shall file with the Director of the Securities Division "[a] Uniform Notice of Federal Crowdfunding Offering (Form U-CF)" and a consent to service of process, as permitted under NSMIA.   950 C.M.R. §14.402(B)(13)(p)(1).   It imposes no other requirements on issuers related to offerings exempt under federal Regulation Crowdfunding, and imposes no requirements on intermediaries or funding portals.[6]

### B.      Plaintiff's Allegations

Plaintiff is an undergraduate student residing in the Commonwealth of Massachusetts. Compl. ¶ 13.  Plaintiff alleges that he is "starting a business in the crowdfunding industry" via a "C Corporation [incorporated] in Delaware with assigned filing number 6950848," which he refers to as SeedFunder, Inc. ("SeedFunder").  *Id.*

Plaintiff's Complaint indicates that he seeks to operate his business and to raise capital across state lines.  For example, Plaintiff alleges that his business plan "by design engages in interstate transactions."  Compl. ¶ 47.  And he asserts that the MCE "limit[s] the plaintiff's ability to conduct securities offerings across state lines," that it impedes his "ability to engage in crowdfunding transactions with individuals outside of Massachusetts," and that the regulations impact "the plaintiff's

---

[6] 950 CMR § 12.206 does require that a crowdfunding portal make a notice filing with the Securities Division.

cross-border securities offerings" Compl. ¶¶ 52-58.  Plaintiff alleges that the MCE has discouraged him from facilitating offerings within the Commonwealth of Massachusetts, has forced him to "diversify" his business model, and has cost him unspecified business opportunities.  Compl. ¶¶ 3, 4, 5, 12, 39-42, 53.  Plaintiff's Complaint does not cite or challenge any other state regulations.[7]

## ARGUMENT

### A.     Standards of Review

To survive a jurisdictional challenge under Rule 12(b)(1), the party asserting jurisdiction bears the burden of demonstrating the existence of federal subject matter jurisdiction.  *See Skwira v. United States*, 344 F.3d 64, 71 (1st Cir. 2003).  Where, as here, the challenge to subject-matter jurisdiction is facial, the court's inquiry as to subject-matter jurisdiction "mirrors the plausibility standard for Rule 12(b)(6) motions." *Laufer v. Acheson Hotels, LLC*, 50 F.4th 259, 265 (1st Cir. 2022), *cert. granted*, 143 S. Ct. 1053, 215 L. Ed. 2d 278 (2023).

To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, a complaint must allege facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In evaluating this motion to dismiss, the Court generally assumes the truth of "all well-plead[ed] facts" but need not do so for legal conclusions; a plaintiff need not provide "detailed factual allegations," but must allege more than "an unadorned, the-defendant-unlawfully-harmed-me accusation.  Naked assertion[s]" devoid of "further factual enhancement" will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-86 (2009).

---

[7] Plaintiff does not allege anywhere that he "issues or proposes to issue any security," such that he would qualify as an issuer under the Securities Act or state law.  15 U.S.C. § 77(b)(a)(4).  Rather, he alleges that his company is intended to be a "funding portal" rather than an issuer, although he does not allege that he has registered with the SEC as a broker or funding portal.  Compl. ¶¶ 78-79; 15 U.S.C. § 77d-1(a).

**B.     The Court Should Dismiss The Entire Complaint For Lack of Jurisdiction
And For Failure To State A Claim**

**1.     Plaintiff Lacks Standing To Bring A Claim Challenging The MCE**

Plaintiff's Complaint rises and falls on a single premise: that he, the operator of a business
that is engaged or proposes to engage in interstate crowdfunding, has been injured by the operation
of the MCE, and particularly by its alleged inconsistencies with the federal scheme of securities
regulation.   But that premise is mistaken.   The MCE regulates the conduct of (1) issuers of
securities (2) who are business entities (3) incorporated under the laws of the Commonwealth, and
(4) conducting offerings wholly within the Commonwealth.   Plaintiff is none of these; he is a
natural person whose company is not alleged to be an issuer of securities, is incorporated in
Delaware, and facilitates interstate offerings.   Plaintiff's Complaint must therefore be dismissed
because he is not subject to enforcement of the regulation he challenges, he therefore lacks standing
to sue, and this Court lacks subject-matter jurisdiction over the action. *United States v. AVX Corp.*,
962 F.2d 108, 113 (1st Cir. 1992).

"To establish Article III standing, an injury must be concrete, particularized, and actual or
imminent; fairly traceable to the challenged action; and redressable by a favorable ruling."
*Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).   A plaintiff "must show that he has
sustained or is immediately in danger of sustaining some direct injury . . . and the injury or threat
of injury must be both real and immediate, not conjectural or hypothetical." *City of Los Angeles
v. Lyons*, 461 U.S. 95, 101–02 (1983).   A party asserting unconstitutional state action "must be
able to show, not only that the [action] is invalid, but that he has sustained or is immediately in
danger of sustaining some direct injury as the result of its enforcement." *Massachusetts v. Mellon*,
262 U.S. 447, 488 (1923).   A plaintiff will have standing where they can show, for example, "the
regulation is directed at them in particular; it requires them to make significant changes in their

everyday business practices; if they fail to observe the Commissioner's rule they are quite clearly exposed to the imposition of strong sanctions." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 154 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).  A plaintiff does not have standing to challenge a regulation that does not apply to the defendant's conduct. *PeTA, People for the Ethical Treatment of Animals v. Rasmussen*, 298 F.3d 1198, 1203 (10th Cir. 2002).

The Complaint revolves around Plaintiff's reading of one regulation, the MCE codified at 950 C.M.R. § 14.402(B)(13)(o).  Compl. at ¶¶ 3-9, 38-45.  Every count in Plaintiff's Complaint asserts that the Defendants' regulations concerning the crowdfunding of securities have caused his injuries.  Compl. ¶¶ 50-115.  The Complaint does not cite or reference any other state regulation; it is the MCE, and only the MCE, that Plaintiff appears to challenge in his Complaint.  And the Complaint clearly asserts that, in Plaintiff's perception, the MCE has injured Plaintiff in his operation of an expressly interstate business.

Plaintiff alleges that "[b]eing a natural person who plans on soliciting at least fifty percent of SeedFunder's offers of securities within the Commonwealth of Massachusetts, Mr. Mourier is subject to regulation by the [Massachusetts Securities Division] which shows that state crowdfunding laws apply to him in their entirety."  Compl. ¶ 16.  He alleges that "[b]y subjecting the plaintiff's crowdfunding activities to additional rules and limitations *solely due to their interstate nature*," the Commonwealth's regulations discriminate against interstate commerce. Compl. ¶ 56.  And he alleges that 950 CMR 14.402(B)(13)(o) specifically impedes his "ability to engage in crowdfunding transactions with individuals outside of Massachusetts."  Compl. ¶ 58.  But Plaintiff is *not* subject to state securities regulations "in their entirety"; indeed, as Plaintiff's business is interstate, the MCE, which is available only for offerings "sold only to residents of the

Commonwealth" does not apply to his interstate business at all.  950 CMR 14.402(B)(13)(o)(2).
He is free to conduct his interstate business as an intermediary consistently with federal law.

Moreover, the provisions of the MCE Plaintiff challenges all apply to *issuers* of securities
rather than to intermediaries like SeedFunder.[8]  Plaintiff does not allege anywhere that he or
SeedFunder is an issuer, meaning a "person who issues or proposes to issue any security" under
both state and federal law.  15 U.S.C. § 77b(a)(4); Mass. Gen. Laws ch. 110A, § 401(f).  To the
contrary, he repeatedly reiterates that he operates a primary funding portal – a distinct entity with
a distinct function under the Securities Act, and one performing a function comparable to a broker-
dealer.  Compl. ¶¶ 12, 78-93; 15 U.S.C. § 77d(a)(6) (requiring that transactions under the federal
crowdfunding exemption be "conducted through a broker or funding portal"), 15 U.S.C. § 77d-
1(a) (establishing various requirements for intermediaries and funding portals).[9]  Finally, the MCE
is available only for offerings conducted by issuers "[f]ormed under the laws of the
Commonwealth."  950 C.M.R. § 14.402(B)(13)(o)(a)(1).  Plaintiff alleges that his company is a
Delaware corporation.  Compl. ¶ 13.

At bottom, the MCE regulates a class of entities of which Plaintiff is not a part – issuers,
who are business entities, incorporated under Massachusetts law, conducting offerings wholly
within Massachusetts.  Plaintiff does not and cannot show that the regulation is "directed at [him],"

---

[8] Contrary to Plaintiff's assertions, the MCE is largely unconcerned with the actions of interstate
intermediaries, aside from requiring that those who accept remuneration in connection with the
offering be registered as broker-dealers under the federal Exchange Act, and that those
intermediaries have not been convicted of securities violations or subject to other similar
enforcement actions.  950 C.M.R. § 14.402(B)(13)(o)(7), (10).

[9] The MCE further applies to business entities rather than natural persons such as Plaintiff.
Generally, "a corporate shareholder (even a sole shareholder) may not sue in his own name to
redress injuries suffered solely by the corporation."  *Gianfrancesco v. Town of Wrentham*, 712
F.3d 634, 637 (1st Cir. 2013).

that it compels changes in his everyday business practices, or that he is imposed to any sanction at all absent compliance.  He therefore lacks standing to challenge it.  *Abbott Labs*, 387 U.S. 154.

### 2. Should The Court Reach The Merits Of Plaintiff's Claims, It Should Dismiss For Failure To State A Claim

Since all of Plaintiff's claims rest on the mistaken premise that he has suffered, or could suffer, an injury under the MCE and that he has standing to challenge it, they should all be dismissed for lack of standing.  Nevertheless, should the Court reach the merits of Plaintiff's claims, each should be dismissed for failure to state a claim.

### i. Counts 1 and 2 Should Be Dismissed Because There Is No Conflict Between The State And Federal Regulatory Schemes

Plaintiff's Commerce Clause and preemption claims fail because, contrary to Plaintiff's understanding, the federal and state schemes for securities regulation, and particularly the regulation of crowdfunding, do not conflict or overlap, but rather coexist by design.  The Securities Act includes an express carve-out for intrastate offerings, leaving it to the states to regulate in that arena consistently with basic principles of federalism.  And the MCE, like other state securities regulations and statutes, defers to the federal scheme with respect to interstate commerce.  There is no conflict, and no preemption issue with respect to the MCE.

By its express terms, the Securities Act and its implementing regulations are concerned with interstate offerings and do not apply to purely intrastate offerings.  15 U.S.C. 77c(a)(11).  And by its express terms, the MCE is concerned only with offerings "sold only to residents of the Commonwealth in compliance with the requirements of § 3(a)(11) of the Securities Act of 1933 (15 U.S.C. § 77c(a)(11)) or SEC Rule 147 or 147A."  950 C.M.R. § 14.402(B)(13)(o)(2).  An offering may be subject to one or the other, but it cannot simultaneously be subject to both; it is either federally regulated or state-regulated.  That is specifically true for crowdfunded offerings,

11

which are either regulated under 15 U.S.C. § 77d(a)(6) and 15 U.S.C. § 77d-1 if they are interstate to any extent, and by the relevant state law (in this case the MCE) if purely intrastate.

Any perceived inconsistency between the MCE and the Securities Act is therefore not a conflict, but an express product of federalism.  This is not a case where, for example, "state law imposed a duty on [issuers] to take a certain action, and federal law barred them from taking that action."  *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 624 (2011).  Rather, federal law clearly provides that under certain circumstances, states remain free to regulate the offer and sale of securities without federal preemption, and the Commonwealth and other states have filled that gap.

The Securities Act's express carve-out for purely intrastate offerings demonstrates that *field* preemption does not apply to the regulation in question: there is no "framework of regulation so pervasive . . . that it leaves no room for the States to supplement it" for intrastate offerings. *Arizona v. United States*, 567 U.S. 387, 399 (2012).  To the contrary, the carve-out negates any inference of "intent on the part of the federal government to oust a whole field of state regulation." *Capron v. Off. of Att'y Gen. of Massachusetts*, 944 F.3d 9, 26 (1st Cir. 2019).  Nor does conflict preemption apply here, because there is no conflict.  The text or structure of the Securities Act do not permit an inference that state regulation of purely intrastate crowdfunding would frustrate the purposes and objectives of Congress, *id*. at 28, because, again, the Securities Act expressly exempted intrastate securities regulation from its purview.[10]

Where, as here, "coordinated state and federal efforts exist within a complementary administrative framework, and in the pursuit of common purposes, the case for federal pre-emption

---

[10] The SEC, the federal agency tasked with administering the Securities and Exchange Acts, agrees that state crowdfunding exemptions under Section 3(a)(11) of the Securities Act are not preempted by federal law or regulation.  *See* 80 Fed. Reg. 71484.

becomes a less persuasive one." *New York State Dep't of Social Servs. v. Dublino*, <u>413 U.S. 405, 421688</u> (1973) (citation omitted).  In fact, "Congress repeatedly has expressed its intent to preserve the States' role in regulating securities."  *Robinhood Fin. LLC v. Sec'y of Commonwealth*, <u>492 Mass. 696, 717–18</u> (2023).  The structure of the JOBS Act and of the Securities Act generally demonstrates just that: Congress desired for states to continue to regulate purely intrastate offerings as they have done for nearly a century, including when those offerings are crowdfunded.  Plaintiff fails even to plausibly allege that the MCE is preempted by federal law or regulation, and the Court should dismiss Counts One and Two of the Complaint.[11]

> ### ii.    Count Three of Plaintiff's Complaint Fails To State A Claim Because Plaintiff Has Not Alleged Any Infringement On Protected Speech

Plaintiff next asserts that the MCE restricts commercial speech in violation of the First Amendment.  This assertion is likewise meritless.  For commercial speech to come within the ambit of the First Amendment, "it at least must concern lawful activity and not be misleading." *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, <u>447 U.S. 557, 566</u> (1980). "While the Constitution may protect one's right to counsel others regarding the conduct of their affairs, it does not guarantee that particular kinds of conduct that one might desire to recommend must be sanctioned by the law."  *Wine & Spirits Retailers, Inc. v. State of Rhode Island &*

---

[11] Plaintiff's Dormant Commerce Clause claims likewise fail.  As articulated in the Complaint, the MCE does not discriminate against interstate commerce.  As alleged, the MCE – which applies to intrastate commerce -- includes a *more* stringent cap on annual crowdfunding per issuer than federal regulations do for interstate offerings. Compl. ¶¶ 4, 8.  Plaintiff is also mistaken in asserting that federal law permits issuers who are "investment companies" or involved in resource extraction to take advantage of the crowdfunding exemption: federal statutes and regulations make both classes of issuers ineligible for the exemption, as the MCE does.  *See* <u>15 U.S.C. § 77d-1(f)(2)-(3)</u> (removing exemption eligibility for "an investment company" or any issuer "subject to the requirement to file reports pursuant to section 78m of this title"; <u>15 U.S.C. § 78m(q)(1)(D)</u> (imposing reporting requirement on "resource extraction issuers," who "engage[] in the commercial development of oil, natural gas, or minerals."); <u>17 C.F.R. § 227.100</u> (same).

*Providence Plantations*, 364 F. Supp. 2d 172, 176–77 (D.R.I.), *aff'd sub nom. Wine & Spirits*

*Retailers, Inc. v. Rhode Island*, 418 F.3d 36 (1st Cir. 2005).

Plaintiff alleges no facts actually establishing a First Amendment violation, or indeed any restriction on speech; nothing in the Complaint identifies any provision of the regulation that bars or chills protected speech or regulates expressive conduct or any instance of Plaintiff's speech having been restricted. At most, the Complaint alleges, without elaboration, that the MCE "impose[s] content-based restrictions on crowdfunding offerings," apparently insofar as they preclude issuers who are investment companies or "[a] business involving petroleum exploration or production, mining, or other extractive industries" from using the exemption. Compl. ¶¶ 4, 7, 37, 39, 42, 62, 64, 71, 103. But a restriction on what businesses can participate in an *offering* pursuant to a particular registration exemption does not impede Plaintiff's ability to communicate fully and accurately about that offering, or about those businesses. Those issuers are permitted to offer and sell securities in Massachusetts if they comply with ordinary registration requirements, and Plaintiff is free to communicate about those offerings in any way he likes. To the extent that he would like to communicate that certain issuers are exempt from state registration requirements when in fact they are not, the First Amendment "does not prevent restrictions directed at commerce or conduct from imposing incidental burdens on speech*." Am. Soc'y of Journalists & Authors, Inc. v. Bonta*, 15 F.4th 954, 961 (9th Cir. 2021), *cert. denied*, 142 S. Ct. 2870 (2022) (citations omitted); *see Wine & Spirits Retailers*, 364 F. Supp. 2d 177.

> ### iii.   Counts Four And Five Of Plaintiff's Complaint Should Be Dismissed As He Has Failed To Allege Differential Treatment

Plaintiff's claims under the Equal Protection and due process clauses of the Fourteenth Amendment also fail. Both claims revolve around the same premise: that the MCE regulates intermediaries like Plaintiff's company, a funding portal, more stringently than "traditional

brokerage firms" and investment advisers are regulated by other state statutes and regulations. Both are deficient for the same reason: the Complaint includes no factual allegations relating to how those *other* entities are regulated, and in any event, the MCE does not subject intermediaries to differential treatment as a matter of law.

Plaintiff's conclusory allegations state only that differently structured businesses supposedly enjoy less stringent regulatory structure, Compl ¶¶ 78, 89, but he does not support that statement with any alleged facts. Plaintiff fails entirely, for example, to articulate how "traditional brokerage firms and investment advisers" are regulated, why they are similarly situated to Plaintiff, what their registration requirements may be, why those requirements are more or less stringent than the regulations applicable to crowdfunding portals, or critically what part of the MCE restricts Plaintiff's activities relative to these supposed comparators. In fact, the MCE draws no distinction between funding portals and brokerages or investment advisers, nor does it regulate the conduct of intermediaries at all aside from requiring them to register as broker-dealers under the Exchange Act if they wish to accept a commission, fee, or other remuneration. 950 C.M.R. § 14.402(B)(13)(o)(7). That is true for any intermediary entity, including a "traditional brokerage firm." The regulation "on its face is a general one, applying to all similarly situated persons or transactions." *Chase Sec. Corp. v. Donaldson*, 325 U.S. 304, 309 & n.5 (1945).[12]

As Plaintiff concedes, the MCE is an economic regulation subject to rational-basis review under the Due Process Clause. Compl. ¶ 79; *Dandridge v. Williams*, 397 U.S. 471, 484 (1970). And there is a clear rational basis for the MCE: like the JOBS Act, it is designed to relieve small

---

[12] In any event, Plaintiff's argument is exactly backward. The MCE creates an *exemption* from the more substantial registration requirements that ordinary issuers deal with under the Uniform Securities Act, including the filing of extensive forms, the payment of fees, minimum capital and bonding requirements, Mass. Gen. Laws ch. 110A, § 202, account-keeping and the filing of financial reports, Mass. Gen. Laws ch. 110A, § 203, and several other requirements.

businesses of compliance with the more complex and onerous regulatory scheme that larger issuers and broker-dealers face, while ensuring some measure of investor protection.[13]  Plaintiff himself observes that the "intent behind these regulations appeared to be aimed at protecting investors and ensuring the integrity of the financial system" which he admits may be a "laudable" purpose. Compl. ¶¶ 36, 37.  He cannot plausibly allege that there is no rational basis for the regulations when he himself acknowledges the legitimate state interest behind them, even if he may disagree with the Commonwealth as to their effect.

### iv.    Plaintiff Fails To Allege Unconstitutional Vagueness

Plaintiff next contends that three provisions of the MCE, all of which regulate the conduct of issuers formed under the laws of the Commonwealth (which Plaintiff and his company are not) are each unconstitutionally vague.  "[E]conomic regulation is subject to a less strict vagueness test because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action."  *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 498 (1982).  That principle applies with force here, where several of the provisions Plaintiff challenges are well-understood terms of art.  Plaintiff identifies three terms or provisions in the MCE he views as unconstitutionally vague: the term "generally accepted accounting principles," the requirement that an issuer take "reasonable steps" to verify that an investor will not purchase crowdfunded securities in an amount in excess of $2,000 or 10% of the investor's annual income up to a limit

---

[13] See Press Release, William Francis Galvin, Secretary of the Commonwealth, *Massachusetts Crowdfunding Exemption Summary and Highlights*, available at https://www.sec.state.ma.us/divisions/securities/download/CrowdfundingSummary.pdf (MCE is "designed to foster job creation by helping small and early-stage Massachusetts companies find investors and gain greater access to capital with fewer restrictions.").  The Defendants respectfully request that this Court take judicial notice of the Secretary's statement, which is a public record subject to judicial notice on a motion to dismiss. *Pietrantoni v. Corcept Therapeutics Inc.*, 640 F. Supp. 3d 197, 205 (D. Mass. 2022).

of $100,000; and an exclusion from eligibility for issuers where "any beneficial owner of 20% or more of the issuer's outstanding voting equity securities, calculated on the basis of voting power" has been convicted of a crime or subjected to certain enforcement actions in connection with the offer or sale of security within a certain time before the offering.  Compl. ¶ 98.

"Generally accepted accounting principles" is a term of art referring to specific accounting industry standards promulgated by industry regulators, namely the Financial Accounting Standards Board, that "embody the prevailing principles, conventions, and procedures defined by the accounting industry from time to time."  *In re Cabletron Sys., Inc.*, 311 F.3d 11, 34 (1st Cir. 2002); *see In re Stone & Webster, Inc., Sec. Litig.*, 414 F.3d 187, 196 (1st Cir. 2005); *Greebel v. FTP Software, Inc.*, 194 F.3d 185, 201 (1st Cir. 1999).  "Voting power" is a term of art commonly understood to refer to "the power to vote, or to direct the voting of, [a] security," *see, e.g.,* 17 C.F.R. § 240.13d-3.  It is used because an issuer may often issue different classes of securities with different degrees of voting power, or some classes which carry no voting power at all.  *Stone v. Massa*, 351 Mass. 264, 275 (1966).[14]  Finally, "reasonable steps" is a term well established and widely used in the common law.[15]  It is intended to be context- and fact-dependent and should be

---

[14] For example, some owners of 20% of an issuer's shares may not exercise 20% of the company's voting power, while others may own less than 20% of outstanding shares but may exercise a significantly greater share of voting power.  The MCE's exclusion is targeted at excluding issuers whose voting leadership – the individuals with significant power to direct and control the company – have been subject to one of various securities enforcement actions during a relatively recent period.

[15] *See, e.g.*, *Incase Inc. v. Timex Corp.*, 488 F.3d 46, 52 (1st Cir. 2007) (observing that common-law claim for trade secrets misappropriation requires a showing that a plaintiff " took reasonable steps to preserve the secrecy of the information"); *Hache v. AIG Claims, Inc.*, 607 F. Supp. 3d 100, 114–15 (D. Mass. 2022), *reconsideration denied*, No. 20-CV-10652-PBS, 2022 WL 3867538 (D. Mass. Aug. 30, 2022) (waiver of attorney-client privilege following inadvertent disclosure "occurs ... when the holder has failed to take reasonable steps to reclaim the protected material."); Fed. R. Civ. P. 37(e) (imposing duty upon parties to take "reasonable steps" to preserve electronically stored information).

understood by a layperson to constitute ordinary diligence under the applicable circumstances. *See Jones v. Flowers*, 547 U.S. 220, 225 (2006) (equating "reasonable steps" with exerting "reasonably diligent efforts . . . if it is practicable to do so"). The SEC has explained, in a similar context regarding a requirement that issuers take reasonable steps to verify that purchasers in certain offerings are "accredited investors", that "whether the steps taken are 'reasonable' would be an objective determination by the issuer (or those acting on its behalf), in the context of the particular facts and circumstances of each purchaser and transaction," and established several principles and non-exclusive methods of articulating what might constitute such reasonable diligence. 78 Fed. Reg. 44766-44783.

<div align="center">

**v.    Count Seven Is Barred By The Eleventh Amendment**

</div>

In addition to rehashing Plaintiff's erroneous preemption claim, Count Seven of the Complaint is barred by the Eleventh Amendment. "The Eleventh Amendment generally is recognized as a bar to suits in federal courts against a state, its departments, its agencies, and its officers acting in an official capacity, unless the state has consented to suit or Congress has overridden the state's immunity. *Leslie v. Superior Ct. of Massachusetts*, No. CV 17-12384-IT, 2017 WL 6757546, at *2 (D. Mass. Dec. 22, 2017). The Eleventh Amendment precludes suits against a state agency when that agency is considered an "arm of the Commonwealth." *See Grajales v. Puerto Rico Ports Auth.*, 831 F.3d 11, 15 (1st Cir. 2016) (citations omitted). The Securities Division is an arm of the Commonwealth. It is a component part of the Office of the State Secretary, established pursuant to the Secretary's power under the Massachusetts Uniform Securities Act, to assist in its administration. Mass. Gen. Laws ch. 9, § 10A; 950 C.M.R. § 14.406(A)(1). It is subject to the supervision of the Secretary of the Commonwealth. *Id.* It is not separately incorporated, but is wholly controlled by state government, and the duties and salaries

of its employees are determined by the Secretary and paid for out of the Legislature's appropriations.   Mass. Gen. Laws ch. 9, § 2; 950 C.M.R. § 14.406(A)(1).  Each of these factors demonstrates that the Division is an arm of the state immune to suit under the Eleventh Amendment.  *See United States v. Univ. of Massachusetts, Worcester*, 812 F.3d 35, 40-42 (1st Cir. 2016).  Plaintiff does not allege that the Commonwealth has waived its sovereign immunity under the Eleventh Amendment, and Count Seven is therefore barred.[16]

<div align="center">

**vi.    Count Eight Is Also Barred By The Eleventh Amendment**

</div>

Count Eight of the Complaint, which purports to sue OCABR pursuant to Mass. Gen. Laws ch. 156D, section 3.04, should be dismissed for lack of subject matter jurisdiction and for failure to state a claim.  The Eleventh Amendment bars this Court's jurisdiction over a claim against a state agency brought under state law, even for "state-law claims brought into federal court under pendent jurisdiction."  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984). Moreover, Mass. Gen. Laws. ch. 156D, section 3.04 does not confer a private right of action against a public agency; rather, it confers a right of action against a private corporation or a director, officer, employee, or agent of the corporation upon (1) a shareholder, (2) the corporation itself, and (3) the Attorney General.  Plaintiff cannot assert a claim against a state agency pursuant to the statute, nor consistently with the Eleventh Amendment.[17]

---

[16] Count Seven purports to sue pursuant to 15 U.S.C. §§ 77r and 78bb.  Neither of these federal statutes confers a private right of action on an individual against a State official for Securities Act violations – and certainly not against any State itself.

[17] Even if Plaintiff had identified a private right of action under which he *could* sue OCABR, and even if this court had jurisdiction over the claim (which is barred under *Pennhurst*), the Complaint does not identify any specific unlawful conduct by OCABR.  It offers only the bare and conclusory allegations that "OCABR has been enforcing regulations on brokerage activities, specifically involving brokers subject to Massachusetts securities laws" and that "OCABR's actions in regulating brokers are ultra vires and in violation of the statutory [l]imitations."  Compl. ¶¶ 113-
(footnote continued)

### C.      Leave To Amend Would Be Futile

Plaintiff is entitled to amend his complaint as of cause within 21 days of the service of Defendants' Motion.   Should Plaintiff elect not to do so, and should this Court dismiss the Complaint, the Court may consider whether leave to amend should be granted in the interest of justice.   Fed. R. Civ. P. 15(a)(2).   Defendants respectfully submit that leave to amend would be futile in this case.   Plaintiff cannot cure the defects in his Complaint by simply adding additional factual allegations, naming the proper defendants, or adding SeedFunder as a plaintiff; at bottom, Plaintiff seeks to invalidate a state regulation that simply does not apply to him or to his business and cannot possibly injure him in the conduct of that business.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss Plaintiff's Complaint with prejudice.

<div style="margin-left:40%">

Respectfully submitted,

ANDREA JOY CAMPBELL
ATTORNEY GENERAL

 /s/ ARJUN K. JAIKUMAR
Arjun K. Jaikumar, BBO# 691311
Assistant Attorney General
Government Bureau
Office of the Attorney General
One Ashburton Place
Boston, MA 02108-1698
(617) 963-2856
(617) 727-5785 (Facsimile)
arjun.k.jaikumar@mass.gov

October 10, 2023

</div>

---

114.  It does not identify which regulations OCABR has enforced that are supposedly unlawful, why they are unlawful, or why they exceed the agency's statutory authority as set forth in Mass. Gen. Laws ch. 24A, §§ 1-2.  Count Eight should be dismissed for this reason as well.

## **CERTIFICATE OF SERVICE**

I certify that, on October 10, 2023, this document was filed through the Electronic Case Filing (ECF) system and thus copies of this document will be sent electronically to the registered participants identified on the Notice of Electronic Filing (NEF).  I further certify that on October 10, 2023, I caused a copy of this document to be delivered on the following via electronic mail.

Thomas A. Mourier
3 Indian Hill Road
Winchester, MA 01890
thomas.mourier@yahoo.com

/s/ Arjun K. Jaikumar
Arjun K. Jaikumar
Assistant Attorney General