**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

———————————————————— |
| 
**THOMAS A. MOURIER,** |
| 
*Plaintiff,* |   **ORAL ARGUMENT REQUESTED**
| 
**v.** |   **Civil Action No. 1:23-cv-11280-IT**
| 
**WILLIAM F. GALVIN, SECRETARY OF** |
**THE COMMONWEALTH, in his official** |
**capacity, MASSACHUSETTS** |
**SECURITIES DIVISION, AND** |
**MASSACHUSETTS OFFICE OF** |
**CONSUMER AFFAIRS AND** |
**BUSINESS REGULATION,** |
| 
*Defendants.* |
| 
———————————————————— |

**MEMORANDUM OF LAW IN OPPOSITION TO**
**<u>DEFENDANTS' MOTION TO DISMISS THE COMPLAINT</u>**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

**STATEMENT OF FACTS**................................................................................................. **6**

**ARGUMENT**.................................................................................................................... **7**

    I. LEGAL STANDARD.................................................................................................7

    II. PLAINTIFF HAS STANDING TO BRING THIS ACTION AND THIS COURT HAS
SUBJECT MATTER JURISDICTION..............................................................................8

        A. Standing to Sue Under Article III.................................................................... 8

        B. Intermediaries are Indirectly Affected and Have a Standing......................... 8

        C. Harm to SeedFunder's Business Model.........................................................9

        D. Subject Matter Jurisdiction............................................................................9

    III. THE PLAINTIFF HAS PLED VIOLATIONS OF THE COMMERCE CLAUSE AND
FEDERAL PREEMPTION............................................................................................10

        A. The MCE and Interstate Commerce under the Commerce Clause............................10

        B. Impact of Vermont's Intrastate Crowdfunding on Massachusetts Businesses........... 11

        C. Preemption in Practice: The MCE's Intrastate Focus and Federal Oversight.............. 11

    IV. PROTECTING COMMERCIAL SPEECH UNDER THE FIRST AMENDMENT:
PLAINTIFF'S ASSERTION...........................................................................................13

        A. Commerce Clause and Protected Speech....................................................13

        B. Preemption Challenges: Conflict with Federal Securities Law.....................13

    V. THE REGULATIONS ARE UNCONSTITUTIONALLY VAGUE AND VIOLATE
PLAINTIFF'S DUE PROCESS RIGHTS........................................................................14

        A. The Term "Generally Accepted Accounting Principles" is Vague in the Context of the
Regulations......................................................................................................14

        B. The Requirement to Take "Reasonable Steps" is Unconstitutionally Vague............... 15

        C. The Regulations Do Not Clearly Define "Voting Rights".................................16

    VI. THE ELEVENTH AMENDMENT DOES NOT SHIELD THE DEFENDANTS.................16

        A. The Eleventh Amendment Does Not Bar the Plaintiff's Claims Against Defendant
Massachusetts Securities Division........................................................................16

        B. The Massachusetts Tort Claims Act Does Not Bar the Plaintiff's Claims Against
Defendant William F. Galvin...................................................................................17

    VII. THE ELEVENTH AMENDMENT AND OCABR: JURISDICTION AND RELIEF........... 18

        A. Asserting a Private Right: MA Gen. Law § 1-2-24A(1)..................................18

        B. Identifying OCABR's Unlawful Conduct........................................................19

    VIII. THE PLAINTIFF HAS THE RIGHT TO AMEND HIS COMPLAINT...............................20

        A. The Court Should Apply a Liberal Standard to Plaintiff's Pro Se Pleadings...............20

        B. Plaintiff Has Standing to Challenge the Constitutionality and Legality of the
Regulations......................................................................................................21

        C. The Regulations May Be Preempted by Federal Law...................................21

    **CONCLUSION**..................................................................................................**22**

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Abbott Laboratories v. Gardner*,
    387 U.S. 136, 154 (1967) …………………………………………………………....…… 8

*Arizona v. United States*,
    567 U.S. 387 (2012) …………………………………..……………………………… 12, 21

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544, 570 (2007) …………………………………………………….………… 7

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398, 409 (2013) …………………………………………………………… 8

*Coleman v. Md. Ct. of Apps.*,
    626 F.3d 187, 190 (4th Cir. 2010) ……………………………………………….. 7

*Connally v. General Construction Co.*,
    269 U.S. 385 (1926) …………………………………………………….…………… 16

*E.I. du Pont de Nemours & Co. v. Kolon Indus.*,
    637 F.3d 435, 440 (4th Cir. 2011) ……………………………….…………….. 7

*Erickson v. Pardus*,
    551 U.S. 89, 94 (2007) …………………………………….…………………… 7, 20

*Ex parte Young*,
    209 U.S. 123 (1908) ………………………………………………… 16, 17, 18

*FCC v. Fox Television Stations, Inc.*,
    567 U.S. 239 (2012) …………………………………………………… 15, 16

*Geier v. American Honda Motor Co.*,
    529 U.S. 861 (2000) ……………………………………….…………………… 14

*Gibbons v. Ogden*,
    22 U.S. 1 (1824) ……………………………………………………………… 13

*Grayned v. City of Rockford*,
    408 U.S. 104 (1972) ……………………………….…………………………… 15

## TABLE OF AUTHORITIES

(*continued*)

**Page(s)**

*Lujan v. Defenders of Wildlife*,
 504 U.S. 555, 560 (1992) …………………………………………..……..…..…….. 21

*Pacific Gas & Electric Co. v. State Energy Resources Conservation and Development Commission*,
 461 U.S. 190 (1983) ………………………………………………………………… 13, 14

*PennEast Pipeline Co. v. New Jersey*,
 141 S. Ct. 2244 (2021) ……………………………….…………………………… 17

*Rice v. Santa Fe Elevator Corp.*,
 331 U.S. 218 (1947) ……………………………….…………………………… 12

*Triestman v. Federal Bureau of Prisons*,
 470 F.3d 471, 474 (2d Cir. 2006) …………………………….……..…….. 20

*Wickard v. Filburn*,
 317 U.S. 111 (1942) ……………………………………………..……..…….. 10

## STATUES

15 U.S. Code § 77b(a)(4) ……………………………………………………….. 7

MA Gen. Law § 1-2-24A(1) ……………………………………………….. 18, 19

MA Gen. Law § 3-4-258(2) ……………………………………………….. 17, 18, 19

V.S.R. § 5-11(d)(1)(B) ………………………………………………………….. 6, 11

## OTHER AUTHORITIES

Fed. R. Civ. P. 15(a)(1) ………………………………………….……………….. 20

U.S. const. art. I, § 8-3 ……………………………………………………….. 13

This memorandum is written in opposition to the Defendants' motion to dismiss the case the Plaintiff, Thomas Mourier brought forth. The Plaintiff's case revolves around the Massachusetts Crowdfunding Exemption (MCE), codified at 950 C.M.R. § 14.402(B)(13)(o), and its interplay with federal statutes and regulations governing crowdfunding for securities, known as Federal Regulation Crowdfunding. The Plaintiff contends that the MCE, in its current form, prevents him from operating a funding portal for interstate offerings in the Commonwealth of Massachusetts, thereby causing harm to his business model which relies on the synchronization of federal and state laws.

The Defendants argue that Plaintiff's allegations stem from a misunderstanding of the MCE and federal regulations, asserting that the MCE is a purely intrastate regulation and does not apply to the interstate crowdfunding in which Plaintiff's business operates. They further argue that the Plaintiff lacks standing to challenge the MCE as he has not been, and cannot be, injured by its operation.

This memorandum will argue that the Plaintiff indeed has standing to challenge the MCE, as it directly impacts his business operations. It will also argue that the Plaintiff's allegations are not merely based on misinterpretations of the law, but rather on a valid concern about the lack of synchronization between state and federal laws governing crowdfunding for securities. This lack of synchronization, the Plaintiff contends, is detrimental to his business model and thus constitutes a legitimate injury.

The Plaintiff's case is supported by several legal precedents, statutes, regulations, and secondary sources, which will be discussed in detail in the following sections. These sources include but are not limited to, the Securities Act of 1933, the

Jumpstart Our Business Startups (JOBS) Act of 2012, and various case law and legal treatises on crowdfunding and securities regulation.

The Plaintiff respectfully requests that the Court deny the Defendants' motion to dismiss and allow the case to proceed to trial, where the Plaintiff will have the opportunity to present his arguments and evidence in full.

## **STATEMENT OF FACTS**

Plaintiff is a pro se litigant bringing action against the Defendants for the explicit purpose of challenging the constitutionality and legality of certain securities regulations imposed by Defendant William F. Galvin while in office and executed by the respective agencies (i.e. MCE) (Compl. ¶ 12.). This crowdfunding exemption in 2014 created vast new opportunities for entrepreneurs and encouraged investors within the state to invest locally. It was ahead of its time since the JOBS Act only went into effect in 2016 with a smaller maximum offering amount. However, over the years it has been neglected by Defendants and while its federal equivalent was updated to ensure small businesses would get the capital needed to survive the Covid recession, the MCE has never been amended in any way since its passing in 2014. This neglect has adversely harmed the crowdfunding industry with investors preferring territories where legislation is written and maintained in the investors' interests. For example, the state of Vermont has kept its securities laws in synchronization with the SEC, thus allowing startups allowed to do business in Vermont to raise a maximum of five million dollars per year from its residents. V.S.R. § 5-11(d)(1)(B).

As alleged in the Complaint, the stringent regulations in the Commonwealth have cumulated to add up to a hostile environment towards angel funding and small businesses, impacting Plaintiff directly. As opposed to following Vermont's initiative in 2019 to modernize Vermont Crowdfunding, Defendants have allowed an important piece of Massachusetts securities law to become unfeasible in today's market conditions and become rarely used.

The Securities Act of 1933 defines "the term issuer means every person who issues or proposes to issue any security; except that with respect to certificates of deposit, voting-trust certificates, or collateral-trust certificates, or with respect to certificates of interest or shares in an unincorporated investment trust not having a board of directors." 15 U.S. Code § 77b(a)(4) (internal quotation marks omitted). The plaintiff has not alleged that he is an issuer.

## **ARGUMENT**

### I.   **LEGAL STANDARD**

To survive a motion to dismiss, Plaintiff must establish only that he has stated a claim to relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also E.I. du Pont de Nemours & Co. v. Kolon Indus.*, 637 F.3d 435, 440 (4th Cir. 2011). When ruling on a motion to dismiss, "a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The plaintiff's complaint "need only give the defendant fair notice of what the claim is and the grounds upon which it rests." *Coleman v. Md. Ct. of Apps.*, 626 F.3d 187, 190 (4th Cir. 2010) (internal quotation marks omitted).

## II.     PLAINTIFF HAS STANDING TO BRING THIS ACTION AND THIS COURT HAS SUBJECT MATTER JURISDICTION.

### A.  Standing to Sue Under Article III

The Defendants argue that the Plaintiff lacks standing because he is not an issuer subject to the Massachusetts Crowdfunding Exemption (MCE). However, this narrow interpretation overlooks the broader impact of the MCE on the entire crowdfunding ecosystem, including intermediaries such as SeedFunder.

To establish Article III standing, the Plaintiff must show that he has sustained or is immediately in danger of sustaining some direct injury as a result of the Defendants' regulations. The injuries need to be concrete, particularized, and actual or imminent. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). Importantly, standing does not require that the Plaintiff be an issuer directly subject to the MCE.

### B.  Intermediaries are Indirectly Affected and Have a Standing

The Plaintiff, as the operator of SeedFunder, a primary funding portal, is intimately connected to issuers within the Commonwealth. While SeedFunder itself may not be an issuer, it plays a crucial role in facilitating crowdfunding transactions for issuers.

The Supreme Court in *Abbott Labs* recognized that standing is conferred when a regulation compels changes in everyday business practices. SeedFunder, as a funding portal, is substantially impacted by the restrictions imposed by the MCE on issuers. *Abbott Laboratories v. Gardner*, 387 U.S. 136, 154 (1967). The regulations hinder SeedFunder's ability to operate seamlessly with issuers within the Commonwealth, limiting the pool of potential clients and disrupting the normal course of business.

### C. Harm to SeedFunder's Business Model

SeedFunder's business model, as detailed in the Complaint, involves connecting issuers with investors, primarily within the Commonwealth and additionally with those nationwide. The MCE's limitations on issuers directly affect SeedFunder's ability to offer its services to the fullest extent. Any hindrance to issuers' ability to raise capital affects SeedFunder's revenue, thus demonstrating a direct and immediate injury.

Contrary to the Defendants' assertion, Plaintiff does not need to be an issuer to suffer a direct injury. The regulation's impact on SeedFunder, as a crowdfunding intermediary, is substantial and satisfies the requirement of a real and immediate injury.

Furthermore, Defendants narrowly assume that a funding portal may only offer crowdfunding at the state or federal level. This is in contrast to SeedFunder's business model which relies upon both sets of regulations being streamlined and easily adaptable.

### D. Subject Matter Jurisdiction

The Defendants contend that this Court lacks subject matter jurisdiction over the action because the Plaintiff is not subject to the MCE. However, Plaintiff is challenging the constitutionality of the MCE, which has a significant impact on SeedFunder's ability to operate and engage in interstate crowdfunding transactions. This constitutional challenge provides a basis for subject matter jurisdiction.

This Court has the authority to hear cases challenging state laws on constitutional grounds. The Plaintiff's claims are not merely hypothetical or conjectural; they stem from the actual and imminent harm inflicted on SeedFunder's business by the operation of the MCE.

Thus, the Plaintiff has standing to bring this action, and this Court possesses subject matter jurisdiction over the constitutional challenges presented in the Complaint.

**III.      THE PLAINTIFF HAS PLED VIOLATIONS OF THE COMMERCE CLAUSE AND FEDERAL PREEMPTION.**

**A. The MCE and Interstate Commerce under the Commerce Clause**

The Plaintiff staunchly contends that the Massachusetts Crowdfunding Exemption (MCE) oversteps its intended boundaries by regulating intrastate offerings, thereby encroaching upon the domain of interstate commerce. The Commerce Clause of the U.S. Constitution empowers the federal government to regulate commerce among the states, ensuring a uniform and coherent economic system. While the MCE ostensibly targets intrastate activities, Plaintiff argues that, in practice, it impermissibly intrudes into interstate commerce.

In support of this argument, Plaintiff invokes the precedent set by the Supreme Court in *Wickard v. Filburn*, a case that established the federal government's authority to regulate purely intrastate activities if they have a substantial effect on interstate commerce. In the context of the MCE, the Plaintiff contends that crowdfunding activities, even if initiated at the intrastate level, can have a significant impact on the broader interstate securities market. *Wickard v. Filburn*, 317 U.S. 111 (1942).

By emphasizing the interconnectedness of modern economic activities and financial markets, Plaintiff aims to demonstrate that the MCE, in its regulation of crowdfunding offerings, extends beyond state borders and intrudes into the larger framework of interstate commerce. This, according to the Plaintiff, triggers a conflict with

federal jurisdiction and invokes the Commerce Clause as a protective constitutional principle.

**B.  Impact of Vermont's Intrastate Crowdfunding on Massachusetts Businesses**

The Plaintiff highlights a tangible example supporting the argument that intrastate crowdfunding regulations can lead to interstate economic consequences. Vermont's more recent adoption of intrastate crowdfunding regulations attracts Massachusetts businesses. Those businesses that are authorized to conduct activities in Vermont opt to raise capital there instead of in Massachusetts, leveraging the regulatory environment provided by Vermont's crowdfunding framework. V.S.R. § 5-11(d)(1)(B).

This situation, according to the Plaintiff, vividly illustrates how intrastate crowdfunding regulations can influence the flow of interstate commerce. It raises concerns about regulatory arbitrage, where businesses, seeking a more favorable regulatory landscape, move across state lines, thereby impacting the uniformity that federal regulation aims to achieve. This, the Plaintiff contends, reinforces the argument that the MCE's regulation of intrastate offerings has implications for interstate commerce, necessitating federal oversight.

By providing such a case-specific illustration, the Plaintiff seeks to underscore the practical consequences of intrastate regulations extending beyond state boundaries and affecting the larger fabric of interstate commerce.

**C.  Preemption in Practice: The MCE's Intrastate Focus and Federal Oversight**

To illustrate the practical implications of this conflict, Plaintiff points to the intrinsic nature of the MCE's focus on intrastate offerings. The MCE explicitly targets offerings

"sold only to residents of the Commonwealth," a state-specific limitation that becomes incompatible when dealing with offerings that transcend state borders.

The Securities Act, on the other hand, operates at the federal level, recognizing the interconnectedness of securities transactions and the need for uniform standards. The clash emerges when the MCE seeks to regulate offerings that have a clear interstate dimension, putting it at odds with the overarching federal regulatory scheme.

This contention aligns with the Supreme Court decision in *Rice v. Santa Fe Elevator Corp.*, which emphasized that even when federal law contains a carve-out for state regulation, state laws are still preempted if they conflict with the purposes and objectives of federal law. *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218 (1947).

In line with this argument, the Plaintiff further asserts that the Securities Act's carve-out for intrastate offerings does not grant states unrestricted regulatory authority. To substantiate this claim, the Plaintiff references the case of *Arizona v. United States*, where the Supreme Court elucidated that state laws are preempted if they conflict with federal laws, even in the presence of carve-outs. *Arizona v. United States*, 567 U.S. 387 (2012).

The Plaintiff contends that the Securities Act's carve-out does not convey a blanket endorsement for states to create regulations that run counter to the fundamental objectives of federal statutes. Drawing inspiration from the *Rice* decision, the Plaintiff emphasizes that the carve-out is not a license for states to enact laws that contradict the overarching federal regulatory framework. *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218 (1947).

## IV. PROTECTING COMMERCIAL SPEECH UNDER THE FIRST AMENDMENT: PLAINTIFF'S ASSERTION

### A. Commerce Clause and Protected Speech

In Count Three, the Plaintiff contends that the Massachusetts Crowdfunding Exemption (MCE) impermissibly restricts commercial speech, thereby infringing upon the protections guaranteed by the First Amendment. (Compl. ¶ 73.). The Plaintiff maintains that the MCE's limitations on certain types of businesses engaging in crowdfunding offerings violate the Constitution.

Plaintiff argues that the MCE's regulations, by imposing content-based restrictions on crowdfunding offerings, directly impact commercial speech. Drawing on the Commerce Clause of the U.S. Constitution, the Plaintiff asserts that intrastate regulations, such as the MCE, touch upon interstate commerce, rendering them subject to scrutiny under the First Amendment. U.S. const. art. I, § 8-3.

To support this argument, Plaintiff refers to the principles outlined in *Gibbons v. Ogden*, emphasizing the expansive scope of the Commerce Clause in regulating activities that substantially affect interstate commerce. *Gibbons v. Ogden*, 22 U.S. 1 (1824).

### B. Preemption Challenges: Conflict with Federal Securities Law

The Plaintiff maintains that the MCE's restrictions are not only a matter of Commerce Clause concerns but also raise issues of preemption. The Supremacy Clause of the U.S. Constitution establishes that federal law prevails when in conflict with state law. Citing *Pacific Gas & Electric Co. v. State Energy Resources Conservation and Development Commission*, the Plaintiff argues that state laws, including the MCE, are

preempted when they conflict with federal law. *Pacific Gas & Electric Co. v. State Energy Resources Conservation and Development Commission*, 461 U.S. 190 (1983).

The Plaintiff contends that the carve-out for intrastate offerings in the Securities Act does not absolve the MCE from preemption challenges. Relying on *Geier*, the Plaintiff argues that state laws, even if carved out by federal law, are still subject to preemption if they conflict with the purposes and objectives of federal law. *Geier v. American Honda Motor Co.*, 529 U.S. 861 (2000).

In essence, Plaintiff asserts that the MCE's restrictions on certain businesses participating in crowdfunding offerings amount to a violation of protected commercial speech under the First Amendment. The Plaintiff urges the court to consider the constitutional implications of the MCE's impact on interstate commerce and the potential conflicts with federal securities law.

## V.  THE REGULATIONS ARE UNCONSTITUTIONALLY VAGUE AND VIOLATE PLAINTIFF'S DUE PROCESS RIGHTS

### A.  The Term "Generally Accepted Accounting Principles" is Vague in the Context of the Regulations

The Defendants posit that terms such as "generally accepted accounting principles" (GAAP), "reasonable steps," and "voting rights" are well-established in their respective industries and hence not unconstitutionally vague. However, a closer examination reveals that, within the context of the regulations, these terms lack the clarity necessary to guide compliance, thereby infringing upon the Plaintiff's due process rights.

While "generally accepted accounting principles" (GAAP) are recognized as a term of art in the accounting industry, its application within the regulations lacks the necessary specificity, creating confusion and ambiguity for issuers. Notably, the lack of a specified version of GAAP within the regulations contributes to this vagueness. This concern is exacerbated by the continuous issuance of updates by the Financial Accounting Standards Board (FASB). Until September of this year alone, there has been a monthly stream of Accounting Standards Updates (ASUs), the vast majority being well over 50 pages long! (source: FASB ASUs). The absence of a clear benchmark within the regulations fails to provide accountants and issuers with a stable reference point, leaving them uncertain about the specific criteria for compliance.

This lack of clarity runs afoul of the constitutional principle articulated in *Grayned v. City of Rockford*, which establishes that a law is unconstitutionally vague if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. *Grayned v. City of Rockford*, 408 U.S. 104 (1972). Unless the Defendants expect a person of "ordinary intelligence" to shift through the dozens of ASUs (~**5,000**+ pages!) released since 2015 and arbitrarily decide on which GAAP to follow, there is, of course, no specificity regarding them in the current version of the MCE.

**B. The Requirement to Take "Reasonable Steps" is Unconstitutionally Vague**

The mandate for funding portals to adopt "reasonable steps" for compliance introduces an element of subjectivity and uncertainty. The term lacks a concrete definition, leading to ambiguity as to what actions constitute "reasonable steps." This situation falls within the framework delineated in *FCC v. Fox Television Stations, Inc.*,

where the Supreme Court ruled that a regulation is unconstitutionally vague if it is so standardless that it permits arbitrary and discriminatory enforcement. *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239 (2012).

### C. The Regulations Do Not Clearly Define "Voting Rights"

The regulations' usage of the term "voting rights" lacks clarity regarding its parameters, confusing issuers. The absence of explicit definitions infringes on due process rights, as articulated in *Connally v. General Construction Co*. *Connally v. General Construction Co.*, 269 U.S. 385 (1926).  The court stated that a statute that either forbids or requires an act in terms so vague that individuals of common intelligence must necessarily guess at its meaning violates the fundamental principles of due process.

In summary, the regulations, as enforced, lack the requisite precision, rendering them unconstitutionally vague and infringing upon the Plaintiff's due process rights. The Plaintiff respectfully urges the Court to reject the Defendants' motion to dismiss and declare these provisions constitutionally infirm.

### VI.    THE ELEVENTH AMENDMENT DOES NOT SHIELD THE DEFENDANTS

### A. The Eleventh Amendment Does Not Bar the Plaintiff's Claims Against Defendant Massachusetts Securities Division

Defendants posit that the Eleventh Amendment serves as a shield against the Plaintiff's claims targeting the Massachusetts Securities Division. However, this argument overlooks the well-established *Ex parte Young* doctrine, a cornerstone in federal jurisprudence. The *Ex parte Young* doctrine empowers federal courts to

adjudicate cases against state officials when their actions are deemed contrary to federal law. The seminal case, *Ex parte Young*, solidifies this principle, asserting that individuals could sue state officers allegedly acting in violation of federal law. *Ex parte Young*, 209 U.S. 123 (1908).

Plaintiff contends that the Massachusetts Securities Division, under the oversight of Defendant William F. Galvin, has enacted regulations that clash with federal law, specifically the National Securities Markets Improvement Act (NSMIA). This stands as a clear assertion of a state official acting in contravention of federal law, squarely within the confines of the *Ex parte Young* exception to Eleventh Amendment immunity.

Recent jurisprudence, exemplified by the Supreme Court's decision in *PennEast Pipeline Co. v. New Jersey*, fortifies the Plaintiff's position. *PennEast Pipeline Co. v. New Jersey*, 141 S. Ct. 2244 (2021). In *PennEast*, the Court affirmed the right of a private entity to sue a state in federal court for enforcing a federally-created property right, despite the state's invocation of Eleventh Amendment immunity. Analogously, the Plaintiff seeks to uphold his federally conferred right to conduct crowdfunding offerings free from undue state interference, as stipulated by NSMIA.

## B. The Massachusetts Tort Claims Act Does Not Bar the Plaintiff's Claims Against Defendant William F. Galvin

Plaintiff's claims are further by the Massachusetts Tort Claims Act ("MTCA") that allows suit against "the secretary of an executive office of the commonwealth" who is "liable for injury or loss of property … caused by [neglect]." MA Gen. Law § 3-4-258(2). Plaintiff alleges that Defendant William F. Galvin, as secretary of the Massachusetts Securities Division, neglected to keep the MCE updated with modern law and allowed it

to become outdated, causing great harm to Plaintiff's business regulated by it. Thus, the MTCA enables Plaintiff to bring action against the MSD and he respectfully urges the Court to reject the Defendants' Motion to Dismiss and acknowledge that the regulations imposed by the MSD are invalid.

## VII.      THE ELEVENTH AMENDMENT AND OCABR: JURISDICTION AND RELIEF

### A. Asserting a Private Right: MA Gen. Law § 1-2-24A(1)

The Eleventh Amendment does not erect a jurisdictional barrier over this Court's authority concerning the claim against OCABR. The constitutional provision confines the Judicial power concerning suits against a state by citizens of another state or foreign entities. However, the Supreme Court's precedent, notably *Ex parte Young*, elucidates that the Eleventh Amendment does not impede suits against state officials for prospective injunctive relief to terminate an ongoing violation of federal law. *Ex parte Young*, 209 U.S. 123, 159-60 (1908).

In the current context, Plaintiff seeks prospective injunctive relief to halt OCABR's continuous transgression of MA Gen. Law § 1-2-24A(1). MA Gen. Law § 1-2-24A(1). This renders the Eleventh Amendment inconsequential; hence, this Court retains jurisdiction over the claim against OCABR.

The contention that MA Gen. Law § 1-2-24A(1) does not confer a private right of action against OCABR is at odds with the Massachusetts Tort Claims Act (MTCA). The MTCA provides a waiver of sovereign immunity for tort claims against public employers, including state agencies like OCABR. MA Gen. Law § 3-4-258(2).

In this scenario, Plaintiff contends that OCABR's enforcement of brokerage regulations is ultra vires, breaching the statutory duty under MA Gen. Law § 1-2-24A(1). This constitutes a tort claim for negligence per se, as OCABR has transgressed its duty within its statutory mandate. Hence, the MTCA bestows a private right of action against OCABR for this claim. MA Gen. Law § 3-4-258(2).

**B. Identifying OCABR's Unlawful Conduct**

The Defendants argue that the Complaint does not identify any specific unlawful conduct by OCABR. However, the Complaint alleges that OCABR has been enforcing regulations on brokerage activities that fall outside the scope of its statutory mandate, in violation of MA Gen. Law § 1-2-24A(1). (Compl. ¶ 113.). This constitutes specific unlawful conduct by OCABR.

Moreover, the Plaintiff has suffered injury to his business as a result of OCABR's unlawful conduct. Specifically, the Plaintiff alleges that OCABR's enforcement of regulations on brokerage activities has caused injury to the securities industry in the Commonwealth.

Additionally, OCABR's written agreement with State Street Corporation in 2015 further supports the Plaintiff's position. The agreement extends OCABR's oversight into areas beyond its traditional mandate, such as the securities industry, showcasing a tangible instance where OCABR oversteps its bounds. The 2015 agreement explicitly mandates that "all business lines and subsidiaries" adhere to new "internal controls ... with all applicable BSA/AML Requirements" deemed "acceptable to the Supervisors." (source: State Street Corporation Agreement - 5/28/2015). This inclusive language extends to State Street's responsibilities as a broker-dealer to its clients. This

19

encroachment into the securities industry, as evident from the agreement, is ultra vires

for OCABR, as its regulatory framework was never designed to govern the complexities

of the securities market. This overreach directly correlates with the harm suffered by the

Plaintiff's business. For these reasons, the Defendants' motion to dismiss should be

denied.

**VIII.      THE PLAINTIFF HAS THE RIGHT TO AMEND HIS COMPLAINT**

**A. The Court Should Apply a Liberal Standard to Plaintiff's Pro Se Pleadings**

Under the Federal Rules of Civil Procedure, the Plaintiff is granted the right to

amend his pleading once as a matter of course within 21 days after serving it or, if a

responsive pleading is required, within 21 days after service of such pleading or a

motion under Rule 12(b), (e), or (f), whichever is earlier. Fed. R. Civ. P. 15(a)(1). The

Defendants' argument that leave to amend would be futile is both premature and

speculative. The Plaintiff should be allowed to amend his complaint within the stipulated

timeframe to rectify any identified deficiencies.

Given the Plaintiff's pro se status, the Court is obligated to apply a liberal

construction to his pleadings, interpreting them to raise the strongest arguments they

suggest. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This lenient standard is applicable

at every stage of pro se litigation, including the pleading stage. *Triestman v. Federal

Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006). The Court should consider the pro

se nature of the Plaintiff's filings when evaluating the sufficiency of the complaint.

**B. Plaintiff Has Standing to Challenge the Constitutionality and Legality of the Regulations**

Contrary to the Defendants' assertion, Plaintiff has standing to challenge the constitutionality and legality of the regulations. The Plaintiff has articulated a specific and imminent injury, asserting that the regulations interfere with his business practices. (Compl. ¶ 40.). This injury is not conjectural or hypothetical but rather concrete and particularized, meeting the standing requirements outlined in *Lujan v. Defenders of Wildlife*. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The Court should recognize the Plaintiff's standing and consider the merits of his claims.

**C. The Regulations May Be Preempted by Federal Law**

The Plaintiff contends that the regulations may be preempted by federal law, particularly in cases of conflict. *Arizona v. United States*, 567 U.S. 387, 399 (2012). Given this assertion, the Plaintiff should be granted the opportunity to further develop this argument through an amendment to his complaint. Preemption, if proven, could significantly impact the validity of the regulations in question, and the Court should allow the Plaintiff the chance to bolster this aspect of his case.

Thus, the Plaintiff respectfully urges the Court to deny the Defendants' motion to dismiss and, in the interest of justice, grant the Plaintiff leave to amend his complaint within the prescribed time frame. This approach aligns with procedural fairness and provides the Plaintiff with the opportunity to address any identified deficiencies, ensuring a thorough and just adjudication of the issues at hand.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendants' motion to dismiss.

Dated: 1/1/2024

       Winchester, Massachusetts

/s/ Thomas A. Mourier

Thomas Mourier

3 Indian Hill Road

Winchester, Massachusetts

01890

(781) 602-0385

thomas.mourier@yahoo.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on 1/1/2024, I electronically filed the foregoing

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

**THE COMPLAINT** with the Clerk of the Court using the CM/ECF system, which will

send notification of such filing to Arjun K. Jaikumar, counsel of record for Defendants.


/s/ Thomas A. Mourier

Thomas Mourier

3 Indian Hill Road

Winchester, Massachusetts

01890

(781) 602-0385

thomas.mourier@yahoo.com