UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THOMAS A. MOURIER,<br><br>    Plaintiff,<br><br>v.<br><br>WILLIAM F. GALVIN, SECRETARY OF THE COMMONWEALTH, in his official capacity; MASSACHUSETTS SECURITIES DIVISION; and MASSACHUSETTS OFFICE OF CONSUMER AFFAIRS AND BUSINESS REGULATION,<br><br>    Defendants. | CIVIL ACTION<br>No. 23-CV-11280-IT<br><br>LEAVE TO FILE GRANTED ON 1/3/2024 |

**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION AND FOR FAILURE TO STATE A CLAIM**
ANDREA JOY CAMPBELL
ATTORNEY GENERAL

Arjun K. Jaikumar (BBO # 691311)
Assistant Attorney General
Office of the Attorney General
One Ashburton Place
Boston, MA 02108
617-963-2856
arjun.k.jaikumar@mass.gov

Dated: January 23, 2024

Defendants William F. Galvin, Secretary of the Commonwealth of Massachusetts, the Massachusetts Securities Division, and the Massachusetts Office of Consumer Affairs and Business Regulation ("OCABR") (collectively, "Defendants") submit this Reply in further support of their Motion to Dismiss (Doc. 18) Plaintiff's Amended Complaint (Doc. 7) for failure to state a claim and for lack of subject matter jurisdiction. Defendants submit this memorandum to respond to several issues of fact and law raised in Plaintiff's Opposition (Doc. 22).

***First,*** Plaintiff acknowledges, as he must, that neither he nor his company SeedFunder is an issuer of securities (nor is Plaintiff himself a business incorporated in the Commonwealth). Opp. at 7, 8. He further acknowledges that he is therefore not within the class of parties eligible for the Massachusetts Crowdfunding Exemption ("MCE"), 950 C.M.R. § 14.402(B)(13). Nevertheless, Plaintiff argues in conclusory fashion that he has standing to challenge the MCE because he is indirectly affected financially by regulations allegedly affecting his supposed client base: "*[a]ny* hindrance to issuers' ability to raise capital affects SeedFunder's revenue, thus demonstrating a direct and immediate injury." Opp. at 9 (emphasis added).[1]

Plaintiff misses the mark, because the MCE does not apply to those issuers with whom SeedFunder would do business. If an offer of securities is exempt from registration under federal Regulation Crowdfunding, the MCE is inapplicable and irrelevant. *See* 950 C.M.R. § 14.402(B)(13)(p). And an offer is exempt under federal Regulation Crowdfunding if, as relevant here, "the transaction is conducted through a broker or funding portal that complies with the requirements of section 77d–1(a)" of the Securities Act, which Plaintiff (who alleges that he is in

---

[1] *But see* Abbott Labs v. Gardner, 387 U.S. 136, 153 (1967), *abrogated by Califano v. Sanders*, 430 U.S. 99 (1977) (holding that "a possible financial loss is not by itself a sufficient interest to sustain a judicial challenge to governmental action.").

the business of facilitating interstate crowdfunding of securities transactions) must be. 15 U.S.C. § 77d(a)(6)(C). Therefore, any issuer with whom SeedFunder, as an interstate crowdfunding portal, might do business would be *ipso facto* eligible for the federal exemption and outside the MCE's purview. Plaintiff simply does not have standing to challenge a state regulation that has no connection to his own business and his potential client base.[2]

The Seventh Circuit considered an analogous case involving a suit brought by real estate brokers –intermediaries linking sellers and buyers, like Plaintiff – challenging a city ordinance precluding homeowners from selling houses until an inspection confirmed compliance to city codes. *MainStreet Org. of Realtors v. Calumet City, Ill.*, 505 F.3d 742, 745 (7th Cir. 2007). The Seventh Circuit (Posner, J.) held the suit barred under the doctrine of prudential standing – "the principle that, subject to certain exceptions, one cannot sue in a federal court to enforce someone else's legal rights." *Id*. at 746 (citing *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 17 (2004); *Warth v. Seldin*, 422 U.S. 490, 509 (1975)). Therefore, even if Plaintiff could assert Article III standing here, the doctrine of prudential standing would likewise bar his claim. But unlike the plaintiffs in *Main Street*, Plaintiff cannot even assert an Article III injury arising out of the MCE, since, as set forth above, his clients would be eligible for the federal exemption instead.

---

[2] Plaintiff further misunderstands Defendants' position to be that "a funding portal may only offer crowdfunding at the state or federal level." Opp. at 9. Defendants certainly do not state or suggest that a funding portal is so limited. Rather, an *offering* can be regulated either under the MCE or federal Regulation Crowdfunding, but not both – and where a federally registered intermediary (which Plaintiff suggests he is) is involved, the latter applies. In any event, Plaintiff himself defines his injury as being "prevent[ed] . . . from operating a funding portal for interstate offerings in the Commonwealth of Massachusetts" and a hampered "ability to operate and engage in interstate crowdfunding transactions," Opp. at 5, 9, and nowhere alleges that he intends to facilitate purely intrastate offerings.

***Second***, Plaintiff's Opposition relies on several allegations not asserted within the Complaint, which are in any event too conclusory to state a claim for relief or in some cases wholly irrelevant to this litigation. For example, to compensate for his failure to allege any facts regarding OCABR's supposedly unlawful conduct, Plaintiff offers only the conclusory and unsupported statement: "OCABR has been enforcing regulations on brokerage activities that fall outside the scope of its statutory mandate." Opp. at 19. He then cites a 2015 agreement between the Massachusetts Division of Banks, the Board of Governors of the Federal Reserve, and State Street Corporation concerning State Street's compliance risk management program. The agreement has nothing to do with crowdfunding and has no connection to Plaintiff's business or the allegations in the Complaint. Plaintiff's Opposition merely reinforces the absence of any concrete allegations against OCABR other than "unadorned, the-defendant-unlawfully-harmed-me" accusations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-86 (2009).

***Third,*** Plaintiff's Opposition ignores the fundamental issue at the heart of preemption analysis: whether Congress either intended to, and did, occupy a field of regulation so completely that it left no room for state regulation, or whether a state regulation directly conflicts with a federal one. The plain and unambiguous language of the Securities Act states that its provisions simply do not apply to securities offered and sold entirely intrastate by intrastate persons or entities. 15 U.S.C. 77c(a)(11). It dispels any notion that Congress intended to occupy the entire field of securities regulation or that the Securities Act's provisions could conflict with analogous state regulations limited to purely intrastate activity.[3]

---

[3] Plaintiff's reliance on *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 222-224 (1947) is misplaced. *Rice* held that certain state regulations were preempted under an *amended* version of the United States Warehouse Act, 7 U.S.C. s 241 *et seq.*, which expressly *removed* language disavowing any conflict with parallel state regulation. It did not, as Plaintiff contends, hold that
(footnote continued)

At bottom, Plaintiff's argument revolves less around any actual conflict or field preemption, and more around a generalized grievance that federal and state regulations are not perfectly "synchronized." Opp. at 5, 6. Neither the Securities Act nor the system of federalism offer or guarantee synchronization. To the contrary, they permit states to experiment and innovate within a limited arena of purely intrastate economic activity, even if the result is that some states – as Plaintiff argues to be the case in Vermont – have more favorable business climates than others.

**Fourth**, Plaintiff's Opposition fails to identify any protected speech allegedly restricted by the MCE sufficient to state a First Amendment claim. Plaintiff's position appears to be that "the MCE's limitations on certain types of businesses engaging in crowdfunding offerings violate the Constitution," in apparent reference to the fact that investment companies and companies in extractive industries cannot avail themselves of the MCE. Opp. at 13. Again, Plaintiff lacks standing to vindicate the First Amendment rights of others.[4] But in any event, "restrictions on protected expression are distinct from restrictions on economic activity or, more generally, on nonexpressive conduct." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567 (2011). Where a state regulates non-expressive conduct, it does not violate the First Amendment. *HomeAway.com,*

---

a state law was preempted "even when federal law contains a carve-out for state regulation," Opp. at 12 – quite the opposite. Similarly, *Arizona v. United States*, 567 U.S. 387, 410 (2012), is inapposite; nothing in the federal immigration laws at issue in *Arizona* stated, as the Securities Act does, that the federal law at issue had no application to an entire class of intrastate activity. Finally, *Geier v. American Honda Motor Co.*, 529 U.S. 861, 867 (2000) is inapposite as Plaintiff has shown no actual conflict with federal regulations.

[4] To the extent Plaintiff views the First Amendment right in question as his own right to offer advice on business services to regulated entities, "suppressing or eliminating the market demand for the particular type of business advice that [Plaintiff] offers" is insufficient to state a First Amendment claim. *Wine & Spirits Retailers, Inc. v. Rhode Island,* 418 F.3d 36, 47 (1st Cir. 2005).

*Inc. v. City of Santa Monica*, 918 F.3d 676, 685 (9th Cir. 2019).  Here, Massachusetts has enacted regulations establishing registration requirements and exemptions, which vary for some business entities under certain conditions, for the offer and sale of securities.  It limits "nothing that even the most vivid imagination might deem uniquely expressive."  *Wine & Spirits Retailers, Inc. v. Rhode Island,* 418 F.3d 36, 53 (1st Cir. 2005).

**Fifth**, Plaintiff contends that the MCE is unconstitutionally vague in its use of the term "voting rights."  The term "voting rights" does not appear in the MCE.  *See* 950 C.M.R. 14.402(B)(13)(o).  As Defendants stated in their opening Memorandum (Doc. 19 at 17), the term "voting power," which does appear in the regulation, is commonly understood to refer to the power to vote or direct the voting of a security.

**Finally**, Plaintiff's Opposition confirms that his claims against the Securities Division and OCABR should be dismissed.  Although the doctrine of *Ex parte Young*, 209 U.S. 123, 159-160 (1908) permits suit against state officers in their official capacity, it does not permit suits against the state itself.  Plaintiff's reliance on *PennEast Pipeline Co., LLC v. New Jersey*, 594 U.S. ---, 141 S. Ct. 2244, 2263 (2021), is likewise misplaced.  As the Supreme Court recognized, *PennEast* represented a situation in which a State had *consented* to the exercise of federal eminent domain power, which the federal government had in turn delegated to private parties.  *Id*. at 2260-2262.  Plaintiff identifies no analogous consent to suit in this case, nor does one exist.  His claims against the Securities Division and OCABR are therefore barred by the Eleventh Amendment.

For the foregoing reasons, Defendants respectfully request that the Court grant its Motion to Dismiss the Amended Complaint with prejudice.

    Respectfully submitted,

    ANDREA JOY CAMPBELL
    ATTORNEY GENERAL

/s/ ARJUN K. JAIKUMAR
Arjun K. Jaikumar, BBO# 691311
Assistant Attorney General
Government Bureau
Office of the Attorney General
One Ashburton Place
Boston, MA 02108-1698
(617) 963-2856
(617) 727-5785 (Facsimile)
arjun.k.jaikumar@mass.gov

January 23, 2024

## CERTIFICATE OF SERVICE

I certify that, on January 23, 2024, this document was filed through the Electronic Case Filing (ECF) system and thus copies of this document will be sent electronically to the registered participants identified on the Notice of Electronic Filing (NEF). I further certify that on January 23, 2024, I caused a copy of this document to be delivered on the following via electronic mail.

Thomas A. Mourier
3 Indian Hill Road
Winchester, MA 01890
thomas.mourier@yahoo.com

/s/ Arjun K. Jaikumar
Arjun K. Jaikumar
Assistant Attorney General