UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THOMAS A. MOURIER,<br><br>    Plaintiff,<br><br>    v.<br><br>WILLIAM F. GALVIN, Secretary of the Commonwealth, in his official capacity, MASSACHUSETTS SECURITY DIVISION, and MASSACHUSETTS OFFICE OF CONSUMER AFFAIRS AND BUSINESS REGULATION,<br><br>    Defendants. | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*    Civil Action No. 1:23-cv-11280-IT |

MEMORANDUM & ORDER

August 1, 2024

TALWANI, D.J.

Plaintiff Thomas Mourier, proceeding pro se, challenges the constitutionality of certain Massachusetts crowdfunding regulations that he alleges conflict with, and are preempted by, federal securities law. Defendants William F. Galvin, Secretary of the Commonwealth of Massachusetts, the Massachusetts Securities Division, and the Massachusetts Office of Consumer Affairs and Business Regulation moved to dismiss. Defendants' Mot. to Dismiss for Lack of Subject-Matter Jurisdiction and for Failure to State a Claim [Doc. No. 18]. Because Plaintiff lacks standing to challenge the regulations, Defendants' Motion is GRANTED.

**I.    Background**

According to his Amended Complaint [Doc. No. 7], Mourier is an undergraduate student who is "starting a business in the crowdfunding industry." Id. ¶ 13. He "filed for and was approved for incorporating a C Corporation in Delaware" and is in the process of amending the C Corporation's name to SeedFunder, Inc. ("SeedFunder"). Id. Mourier started his company "to

organize large capital raises primarily in the Commonwealth of Massachusetts spanning multiple industries, including investment companies as permissible by federal law." Id. ¶ 30. His company's "original business plan revolved around connecting builders within Massachusetts seeking to build residential projects to Massachusetts investors seeking to capitalize on this boom in their home state's housing industry," id. ¶ 31, and "by design engages in interstate transactions." Id. ¶ 47.

Mourier contends that the Massachusetts Crowdfunding Exemption ("MCE"), 950 C.M.R. § 14.402(B)(13)(o), has subjected his business to a patchwork of inconsistent regulations which have hindered SeedFunder's operation and development. He asserts that he has been compelled to reassess and alter his business model, to diversify his plans, and to look to create a platform for use mainly in states with more favorable crowdfunding regulations. Id. ¶ 40. He contends that this strategic shift has necessitated a departure from the original mission of fostering economic growth within Massachusetts. Id. ¶ 41. He also alleges that the MCE has "dissuaded many local builders from participating in crowdfunding campaigns[.]" Id.

Mourier's suit alleges that Defendant Secretary of the Commonwealth Galvin's promulgation of the MCE has infringed Mourier's rights under the Commerce Clause (Count I), First Amendment (Count III), Fourteenth Amendment (Counts IV and V), and Fifth Amendment (Count VI) to the United States Constitution. Id. ¶¶ 50-60, 68-101. Mourier alleges violations of federal preemption principles for imposing regulations that conflict with other federal laws against Defendants Galvin (Count II) and Massachusetts Securities Division (Count VII). Finally, Mourier alleges Defendant Massachusetts Office of Consumer Affairs and Business Regulation ("OCABR") has acted ultra vires (Count VIII) by enforcing regulations on brokerage activities that fall outside of its statutory mandate.

Defendants have moved to dismiss the complaint, Motion to Dismiss [Doc. No. 18], pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

## II.     Subject Matter Jurisdiction

### A. *Standard of Review*

A motion to dismiss for lack of constitutional standing is properly brought as a challenge to the court's subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). See Katz v. Pershing, LLC, 672 F.3d 64, 70 (1st Cir. 2012). Federal courts are courts of limited jurisdiction, so federal jurisdiction is never presumed. Viqueira v. First Bank, 140 F.3d 12, 16 (1st Cir. 1998). The party asserting jurisdiction has the burden of demonstrating the existence of federal jurisdiction. Id.

The doctrine of standing is rooted in Article III of the Constitution, which confines federal courts to the adjudication of actual "cases" and "controversies." See U.S. Const. Art. III, § 2, cl. 1; Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992). Standing consists of three elements: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016), as revised (May 24, 2016) (quoting Lujan, 504 U.S. at 560-61). "The standing inquiry is claim-specific: a plaintiff must have standing to bring each and every claim that she asserts." Katz v. Pershing, LLC, 672 F.3d 64, 71 (1st Cir. 2012) (citing Pagán v. Calderón, 448 F.3d 16, 26 (1st Cir. 2006)). And where the question of standing is based on the pleadings, "the plaintiff bears the burden of establishing sufficient factual matter to plausibly demonstrate his standing to bring the action." Hochendoner v. Genzyme Corp., 823 F.3d 724, 731 (1st Cir. 2016).

B. *Discussion*

All counts of Mourier's Amended Complaint are predicated on the allegation that the MCE has harmed SeedFunder's business. But as Defendants point out, Mourier has not plausibly demonstrated that he is subject to the MCE.

1. Federal Securities Law Regarding Crowdfunding

In 2012, Congress passed the Jumpstart Our Business Startups ("JOBS") Act, which, inter alia, amended Section 4 of the Securities Act of 1933. See 15 U.S.C. §§ 77d(a)(6), 77d-1. The JOBS Act exempts from the Securities Act's registration requirements certain "transactions involving the offer or sale of securities by an issuer." 15 U.S.C. § 77d(a). These exempted transactions include crowdfunded transactions so long as the securities issuer is not otherwise excluded from the exemption. Id. § 77d(a)(6). The JOBS Act also imposed a $1,000,000 cap on the amount a particular issuer may raise annually under the crowdfunding exemption, 15 U.S.C. §§77d(a)(6)(A), though the Securities and Exchange Commission ("SEC") has raised that cap to $5,000,000. See 17 C.F.R. § 227.100.

The JOBS Act also establishes requirements for crowdfunding portals, including that, for any interstate crowdfunding offering, "the transaction is conducted through a broker or funding portal that complies with the requirements of section 77-d-1(a)," 15 U.S.C. §§ 77d(a)(6)(A), (C), which in turn requires that "[a] person acting as an intermediary in a transaction involving the offer or sale of securities for the account of others" within the ambit of the crowdfunding exemption must register with the SEC as a broker or funding portal. 15 U.S.C. §§ 77d-1(a)(1)(A).

Section 3(a)(11) of the Securities Act specifies that its provisions "shall not apply to . . . [a]ny security which is part of an issue offered and sold only to persons resident within a single State or Territory, where the issuer of such security is a person resident and doing business within or, if a corporation, incorporated by and doing business within, such State or Territory." 15 U.S.C. §77c(a)(11). In other words, the Securities Act is concerned with interstate offerings only; purely intrastate offerings are beyond its scope.

2.   Massachusetts Crowdfunding Exemption

In 2014, Defendant Secretary of the Commonwealth William Galvin promulgated the Massachusetts Crowdfunding Exemption ("MCE") to address in-state crowdfunding initiatives. 950 C.M.R. § 14.402(B)(13)(o). The MCE exempts crowdfunding of securities from state registration requirements where, among other things, "[t]he issuer is a business entity . . . [f]ormed under the laws of the Commonwealth," and where the offering is sold only to persons or entities within the Commonwealth, consistent with § 3(a)(11) of the Securities Act. 950 C.M.R. § 14.402(B)(13)(o).

The MCE limits annual aggregate crowdfunding to $1,000,000 where the issuer has not undergone a financial audit in the previous fiscal year, and $2,000,000 where a financial audit has been conducted. Though the federal cap on the annual amount an issuer may raise through crowdfunding initiatives has been increased to $5,000,000, the limits in the MCE have not changed since it was promulgated. The MCE also is not available to any issuer whose officers, directors, or major shareholders have been found to have violated securities laws or other financial regulations or have otherwise committed fraud. 940 C.M.R. § 14.402(B)(13)(o)(10). Generally, the MCE is concerned only with the status and conduct of "issuers" of securities, not broker-dealers or intermediary entities or platforms.

5

       3.       Neither Plaintiff nor His Business is Subject to MCE

The MCE regulates a certain class of parties, namely business entities incorporated within the Commonwealth and operating wholly within the Commonwealth that issue securities. 950 C.M.R. § 14.402(B)(13)(o). Mourier is an individual, not a business entity, and his business, SeedFunder, is, per Mourier's Amended Complaint [Doc. No. 7], incorporated in Delaware, not Massachusetts. SeedFunder reportedly operates interstate, not solely in state, and is also not alleged to be an issuer of securities. Accepting Mourier's allegations as true for purposes of this motion, neither Mourier nor SeedFunder is within the class of parties regulated by the MCE and neither is subject to its requirements.

Mourier concedes that SeedFunder is not an issuer of securities, and thus not subject to the MCE. Mem. of Law in Opp. to Def.'s Mot. to Dismiss the Compl. 8 ("Pl.'s Opp.") 8 [Doc. No. 22]. He nonetheless contends that he "does not need to be an issuer to suffer a direct injury" because "[t]he regulation's impact on SeedFunder, as a crowdfunding intermediary, is substantial and satisfies the requirement of a real and immediate injury." Id. at 9. Relying on Abbott Labs. v. Gardner, 387 U.S. 136, 154 (1967), Mourier argues that standing is conferred when a regulation compels a business to change its everyday practices, and the MCE has hindered SeedFunder's ability to operate with securities issuers in the Commonwealth and has limited SeedFunder's potential clients. Id. at 8. Mourier contends that, though SeedFunder is not itself an issuer, "any hindrance to issuers' ability to raise capital affects SeedFunder's revenue, thus demonstrating a direct and immediate injury" sufficient to establish standing. Id. at 9.

The court need not wade through Mourier's standing analysis, which is based on a misunderstanding of the MCE. The MCE does not apply to offers of securities that are exempt from registration requirements of federal crowdfunding law. 950 C.M.R. § 14.402(B)(13)(p).

One way that a securities offer can become federally exempt is where "the transaction is conducted through a broker or funding portal that complies with the requirements of section 77d–1(a)" of the Securities Act. 15 U.S.C. § 77d(a)(6)(c). Thus, a transaction as described here, through SeedFunder as an alleged facilitator of interstate crowdfunding of securities transactions, is eligible for the federal crowdfunding exemption and thus is outside of the scope of the MCE.

Given that Mourier has not alleged facts under which SeedFunder or its clients would be subject to the MCE, the court finds that Mourier has not demonstrated that he has standing to challenge the regulation. See Lujan, 504 U.S. 555, 562 ("[W]hen the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily substantially more difficult to establish."). Though Abbott Labs contemplated the possibility of standing where a regulation requires a plaintiff to "make significant changes in their everyday business practices," there was no dispute in that case that petitioners had standing or that the regulation at issue was directed at them. 386 U.S. at 154. Here, Mourier has not demonstrated that he, his business, or its clients are affected by the MCE; to the contrary, the MCE's language makes clear that Mourier and his business are not subject to the MCE at all. Accordingly, where Mourier has not sufficiently alleged that he is subject to the MCE's requirements, his allegations of harm cannot be attributed to the regulation, and he does not have standing to challenge it.[1]

---

[1] Where the court does not have subject matter jurisdiction as to all counts, it does not address Defendants' further arguments that counts Seven and Eight of the Complaint are barred by sovereign immunity pursuant to the Eleventh Amendment to the United States Constitution and that Plaintiff has failed to state a claim upon which relief may be granted.

### III.    Conclusion

For the foregoing reasons, <u>Defendants' Motion to Dismiss for Lack of Subject-Matter Jurisdiction and for Failure to State a Claim</u> [Doc. No. 18] is GRANTED.

IT IS SO ORDERED

August 1, 2024                                                                    /s/Indira Talwani

                                 United States District Judge